Eric J. Shimanoff (ejs@cll.com)
COWAN, LIEBOWITZ & LATMAN, P.C.
1133 Avenue of the Americas
New York, NY 10036
(212) 790-9200
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
THERAPLANT, LLC,                          :     Civil Action No.
                                          :
                   Plaintiff,             :
                                          :
     -against-                            :     **COMPLAINT**
                                          :
SHAROZ MAKARECHI and THINK TANK 3,        :
INC.                                      :
                                          :
                   Defendants.            :
------------------------------------------------------------ x

Plaintiff Theraplant, LLC ("Theraplant" or "Plaintiff"), by and through its undersigned counsel, as and for its Complaint against Defendants Sharoz Makarechi ("Makarechi") and Think Tank 3, Inc. ("TT3") (collectively, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.      This is a declaratory judgment action arising under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et. seq*. and the Copyright Act, 17 U.S.C. §§ 101 *et seq*. Theraplant seeks a declaration that it is the sole author and owner, or in the alternative, joint author and co-owner with Makarechi and/or TT3, of certain original works of authorship, including architectural and theoretical product renderings, over which Makarechi and/or TT3 currently claim sole authorship and ownership. Theraplant also seeks an equitable accounting of all profits due to Theraplant based on Makarechi's and/or TT3's use, registration, claim of ownership and/or exploitation of

the works at issue, in addition to the extensive legal fees associated with appropriately addressing these frivolous, detrimental and willful actions by Defendants

## THE PARTIES

2.  Plaintiff Theraplant is Connecticut limited liability company with an address at 856 Echo Lake Road, Watertown, Connecticut 06795.

3.  Upon information and belief, Defendant Makarechi is an individual residing at 51 West 16th Street, Apartment 3B, New York, New York 10011.

4.  Upon information and belief, Defendant TT3 is a corporation organized and existing under the laws of the State of New York, with offices located at 51 West 16th Street, Apartment 3B, New York, New York 10011.

## JURISDICTION AND VENUE

5.  This action arises under the copyright laws of the United States, 17 U.S.C. §§ 101 *et seq*. and seeks a specific remedy based upon the laws authorizing actions for declaratory judgment in the courts of the United States, 28 U.S.C. §§ 2201 and 2202, as well as an equitable accounting and other injunctive relief.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367.

6.  Personal jurisdiction and venue are proper in this judicial District because Defendants reside, are domiciled, transact, do business in or can be found in this District pursuant to NY CPLR §§ 301 and 302.

## FACTS

7.  Theraplant is a licensed medical cannabis producer and distributor for dispensaries located within the State of Connecticut.

8.  Theraplant was founded in 2013 by CEO Ethan Ruby ("Ruby"), who, thirteen

years earlier, was struck in a crosswalk by a car that ran a red light, leaving him paralyzed from the chest down. Despite numerous surgeries and intense rehabilitation, Ruby continued to suffer pain and complications from his injuries. Ruby's physicians prescribed numerous prescription drugs in an attempt to manage his pain, but these medications came with many undesirable side effects, as well as the risk of physical addiction. After thought and consultation with his father, a pediatrician, and his mother, a physical therapist, Ruby decided to try medical cannabis. The success he had with this medical option was life-changing. Ruby has made it his life work to help ensure that the unique benefits of medical cannabis are made accessible to other qualified patients like himself.

9. In or about March 2013, Theraplant began preparing its application to cultivate and distribute medical cannabis within the State of Connecticut (the "Application"). As part of that process, Theraplant retained the services of numerous vendors to produce deliverables and content for and assist with preparation of the Application and to create pictorial renderings of Ruby's vision for pharmaceutical medical cannabis.

10. One such vendor was Makarechi, who was retained through her design company TT3 to assist with the production of theoretical product renderings and other written branding materials intended to be used in conjunction with other original content in the Application as well as in Theraplant's future business (the "Product Materials").

11. Makarechi and Ruby previously were involved together in CityStreets, a New York City pedestrian safety organization. Ruby at one point donated $100,000 to CityStreets to prevent other families from enduring the horrors of what happens when a car strikes a pedestrian.

12. Ruby previously had retained Defendants' services to assist with creating materials and marketing content for other projects, including projects known as Mandome and

Gooderz. During this prior retention, Defendants agreed and the parties thereto understood that all original content created by Defendants would be deemed works for hire in which Defendants had no authorship or ownership interest. During these prior engagements, each deliverable was invoiced and paid. Upon information and belief, at no time have Defendants claimed any ownership interest in these prior materials.

13. Upon information and belief, work for hire agreements between design firms and their clients are the default, customary and usual practice in the design industry.

14. Makarechi knew or should have known, based on her involvement with the Application process, prior dealings and relationship with Theraplant and Ruby and experience in the design industry, that the Product Materials were intended to be part of the larger Application and that all materials produced by Makarechi were works for hire, which would be owned and deemed authored fully by Theraplant and in which Makarechi would have no authorship or ownership interest.

15. Prior to and during the Application process, Defendants represented expressly and consistently that all deliverables and work product were owned by Theraplant and not by Defendants, and that Theraplant would have no restrictions on the present or future use of such materials.

16. During the Application process, Theraplant employees, including Ruby, provided Defendants with detailed instructions as to the desired appearance of the Product Materials, such that Defendants added no or minimal original and copyrightable content to the Product Materials, acting in essence merely as a scribe for Theraplant's and Ruby's vision and specific directions. Copies of some of these rendering are attached hereto as Exhibit A.

17. Theraplant fully compensated Defendants for their retained work regarding the Product Materials, including via a bank check dated November 25, 2013, from Theraplant to TT3 in the amount of $33,074.11.  This check, which was sent to TT3 and Makarechi on or about November 25, 2013, clearly stated "Final Payment **Work for Hire**" (emphasis added).  A copy of the November 25, 2013 check is attached hereto as Exhibit B.   Several other invoices were presented and paid.

18. Upon information and belief, Makarechi endorsed and cashed or deposited the November 23, 2013 check along with each of the other invoiced amounts, shortly after they were sent, thereby accepting the written terms that the Product Materials and any other materials she produced for Theraplant were works for hire.

19. In total, Theraplant paid Defendants over $100,000 for their retention.  Theraplant paid over an additional $45,000 to outside vendors to whom Defendants outsourced components of their work.

20. Subsequent to the submission of the Application, Theraplant sent Makarechi further communications confirming the parties' understanding that the Product Works and all other materials Defendants produced for Theraplant were works for hire.

21. Makarechi is, and was at the time during her work on the Application, the wife of Harris Silver.  During the time Defendants were providing services for Theraplant, Silver served as an employee of Theraplant.  Silver also assisted with creating content for the Application, as well as other materials, within the scope of and during the course of his employment with Theraplant.

22. Among the content created by Silver with other Theraplant employees within the scope of and during the course of their employment with Theraplant were architectural

30320/002/1854676

renderings related to Theraplant's production facilities, including as shown in Exhibit C hereto (the "Architectural Materials"). Such original content was authored and is owned solely by Theraplant as works for hire. Makarechi has admitted that she was not involved in the creation of the Architectural Materials.

23. After most or all of their work for Theraplant was complete, Defendants proposed to Theraplant an additional arrangement whereby Defendants desired to serve as Theraplant's "Agency of Record" for future creative services, such as brand development, packaging and advertising. Among other unilateral terms, Defendants demanded significant compensation for a continued relationship with Theraplant, with minimal obligation by Defendants.

24. When it became clear that Theraplant would not be able to agree to the unilateral agency terms proposed by Defendants, contrary to the parties' original agreement and Defendants' prior representations and understanding, Defendants began to claim intellectual property authorship and ownership rights in the deliverables and other materials and services provided by Defendants to Theraplant. Upon information and belief, Defendants asserted this contrary position, and also took actions that disrupted Theraplant's business, such as disabling Theraplant's website and refusing to deliver a facilities video featuring Ruby, in order to coerce Theraplant into executing a continuing agency contract and paying significant additional compensation for Defendants' prior work. Prior to this time, Defendants represented and agreed that all deliverables and materials provided by Defendants were works for hire owned exclusively by Theraplant, and changed positions only to "hold up" Theraplant for additional compensation.

25. Upon information and belief, as part of her efforts to hold hostage the materials she had provided for Theraplant, on or about May 18, 2014, Makarechi, via her counsel Jeffrey

-6-

30320/002/1854676

P. Burack, Law Office of Jeffrey P. Burack, 412 East 88th Street, Suite 1W, New York, New York 10128, filed an application with the United States Copyright Office to register the Product Materials to which she had contributed as works for hire while she and TT3 were retained by Theraplant and also to register the Architectural Materials created by Theraplant's employees, including Silver, as works for hire (collectively, the "Works").  Upon information and belief, the renderings submitted to the Copyright Office also contained the trademarked name and logo of Theraplant, assets for which Theraplant had paid Defendants as works for hire and which are the sole property of Plaintiff.

26.     Contrary to the agreement and understanding between Theraplant and Defendants, and contrary to Makarechi's written admission that she was not involved in the creation of the Architectural Materials, Makarechi falsely claimed in her copyright application that she was the sole author and owner of all of the Works.

27.     This representation also was contrary to Makarechi's position claimed during her attempts to "hold up" Theraplant and other organizations with which Theraplant's principals were or are associated that TT3 was the owner of the Works.

28.     Thereafter, the Copyright Office granted Makarechi federal copyright registration TXu001929186 covering the Works.  Copies of the Copyright Office's online records concerning copyright registration TXu001929186 are attached hereto as Exhibit D.

29.     At no time during the copyright registration process did Defendants or any other party associated or affiliated with Defendants inform Theraplant about Makarechi's actions. Until 2016, Theraplant was unaware that Makarechi had applied for and was granted copyright registration TXu001929186 covering the Works.

30.     On or about January 6, 2016, Defendants, via counsel Christopher A. Seidl,

30320/002/1854676

Robins Kaplan LLP, 800 LaSalle Avenue, Suite 2800, Minneapolis, Minnesota 55402, sent a demand letter to Leafline Labs, LLC ("LLL"), accusing LLL and other parties, including Theraplant CEO Ruby, of infringing Makarechi's alleged copyrights in certain of the Works. Theraplant denies the allegations set forth in that letter.

31.     The January 6, 2016 letter claims that LLL received the Works from principals of Theraplant, some of whom, including Ruby, also are affiliated with LLL and that LLL copied the Works in LLL's own application to cultivate and distribute medical cannabis in the State of Minnesota.  The letter also disputes that Theraplant has any authorship or ownership interest in the Works, including as works for hire.  The letter demands that LLL and any person affiliated with LLL, including Ruby, immediately and permanently cease and desist reproducing or otherwise exploiting the Works.

32.     Makarechi's registration of the Works with the United States Copyright Office solely in her name and Defendants' assertion against LeafLine, Ruby and other parties of copyright infringement of the Works, over which Makarechi claims sole authorship and ownership, creates a bona fide justiciable and substantial controversy over the authorship and ownership of, and the right to use, the Works.  Thus, an actual case or controversy exists between these parties with adverse legal interests as to present and/or prospective rights and obligations.  A judgment would serve a useful purpose in settling the legal issues, and a judgment would resolve the controversy and offer relief from uncertainty.

## COUNT I
**(Declaration that Theraplant Is the Sole Author and Owner of the Works)**

33.     Theraplant repeats and realleges the allegations set forth in each and every of the foregoing paragraphs with the same force and effect as if set forth fully herein.

34. The Architectural Materials were created by Silver and other Theraplant employees within the course and scope of their employment with Theraplant. Defendants have admitted in writing that they had no involvement in the creation of these works. As such, the Architectural Works were authored and are owned solely by Theraplant as works for hire.

35. The Product Materials were created by employees of Theraplant, including Ruby, within the course and scope of their employment with Theraplant. Defendants provided no original contributions to these works and essentially acted as a scribe recording Theraplant's original expression. As such, the Product Materials are owned solely by Theraplant as works for hire.

36. In the alternative, the Product Materials were created by Defendants as works for hire to be used as part of the Application pursuant to the written agreement between Theraplant and Defendants, accepted by Defendants when Makarechi endorsed and deposited or cashed the November 25, 2013 check, which stated "Final Payment Work for Hire."

37. Makarechi has applied for and obtained a federal copyright registration claiming sole authorship and ownership of the Works and Defendants have asserted infringement of the alleged copyrights in the Works against third parties, including Theraplant's CEO Ruby.

38. A valid and justiciable controversy has arisen and exists between Theraplant and Defendants within the meaning of 28 U.S.C. § 2201.

39. A judicial determination of authorship and ownership of the Works is necessary and appropriate so that Theraplant may ascertain its rights regarding the Works.

40. The court thus should declare, under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* and the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, that Theraplant is the sole author

and owner of the Works and that Defendants have no authorship or ownership interest in the Works.

## COUNT II
### (Declaration that Theraplant Is a Joint Author and Owner with Makarechi and/or TT3 of the Works)
(*in the alternative*)

41. Theraplant repeats and realleges the allegations set forth in each and every of the foregoing paragraphs with the same force and effect as if set forth fully herein.

42. If the court finds with respect to any of the Works that Theraplant is not the sole author and owner thereof, and that Defendants contributed original copyrightable material thereto, the court should declare, under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. and the Copyright Act, 17 U.S.C. §§ 101 *et seq*., that Theraplant is a joint author and co-owner with Makarechi and/or TT3 of such Works.

## COUNT III
### (Accounting)

43. Theraplant repeats and realleges the allegations set forth in each and every of the foregoing paragraphs with the same force and effect as if set forth fully herein.

44. The court should order Defendants to provide an accounting of all monetary and other benefits received by Defendants based on their claim of authorship and ownership of and exploitation of the Works, and further order Defendants to pay to Theraplant all monies and sums equitably due to Theraplant therefrom.

WHEREFORE, Plaintiff Theraplant respectfully request that this court enter judgment in favor of Plaintiff and against Defendants and issue an Order:

A. Declaring that Theraplant is the sole author and owner of the Works and that Defendants are not authors or owners of the Works.

B.   For any of the Works with respect to which the court declares that Theraplant is not the sole author and owner thereof, declaring that Theraplant is a joint author and co-owner with Makarechi and/or TT3 of such Works.

C.   Ordering that Defendants be directed to file with the United States Copyright Office any and all papers necessary to conform the records of the Copyright Office with the court's determination of authorship and ownership of the Works.

D.   Ordering Defendants to account to Plaintiff for all gains, profits and advantages derived from Defendants' claim of ownership in or exploitation of the Works, together with interest thereon.

E.   Ordering Defendants to deliver to Theraplant all Works and other work for hire materials or materials deemed jointly-owned currently in Defendants' possession, custody or control, including any and all Works not previously delivered to Theraplant.

F.   Preliminarily and permanently enjoining Defendants from copying, distributing, making derivative copies of or otherwise exploiting or using the Works.

G.   Ordering Defendants pay to Plaintiff any and all damages sustained by Plaintiff by reason of Defendants' wrongful acts in an amount to be determined at trial, together with interest thereon.

H.   Ordering Defendants to pay punitive damages in an amount to be determined at trial as a result of their willful conduct.

I.   Ordering that, to the extent permitted by law or statute, Plaintiff recover its reasonable attorneys' fees from Defendants, together with the costs of this action.

J.   Ordering that Plaintiff be granted such other and further relief as the court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury in this action of all triable issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: New York, New York
January 28, 2016

Respectfully submitted,

COWAN LIEBOWITZ & LATMAN, P.C.

By: ___s/ Eric J. Shimanoff_____
Eric J. Shimanoff (ejs@cll.com)
1133 Avenue of the Americas
New York, New York 10036-6799
(212) 790-9200
*Attorneys for Plaintiff*